IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF GALLUP,

      Plaintiff,

v.                                        Case No. 1:25-cv-01138-LF-SCY

CH2M HILL ENGINEERS, INC.,
JACOBS ENGINEERING GROUP, INC.,
CH2M HILL COMPANIES LTD.,
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, and the NEW MEXICO
ENVIRONMENT DEPARTMENT,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the City of Gallup's ("City") Motion to Remand, filed December 19, 2025 (Doc. 22), and Defendants' Joint Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Remand, filed February 9, 2026 (Doc. 39). Having reviewed the briefing and the applicable law, the Court rules as discussed below.

**BACKGROUND**

This case involves disputes over work performed at the City's wastewater treatment plant (the "Facility"). Doc. 1-1 at 5.[1] The City and C2HM Hill Engineers, Inc. ("C2HM"), a Delaware corporation, contracted to perform the work described in a document called the Capital Improvements, Operations, Maintenance and Management Agreement (the "Agreement"). *Id.* at 4–5. The funding for the work came from a loan that the New Mexico Environment Department ("NMED") provided to the City (the "Loan"). *Id.* at 5. The loan agreement between the City and

---

[1] All citations are to the CM/ECF pagination on the upper righthand corner of each page.

NMED (the "Interim Loan Agreement") compelled the City to require its contractor (C2HM) "to post a performance and payment bond, approved by NMED, in the amount of the bid"; required NMED's approval of the Agreement as "a condition precedent to its effectiveness"; required NMED approval of all change orders respecting the Agreement; and required a full-time inspector approved by NMED on the project covered by the Agreement. *Id.* That is, NMED was not a signatory to the Agreement, *see id.* at 115, but because it was the source of the City's funding, it was intimately involved in setting the terms of the Agreement, and the Agreement would not take effect without NMED approval.

Jacobs Engineering Group, Inc. ("Jacobs"), a Delaware corporation, acquired C2HM in December 2017. *Id.* at 7. Various improvements, upgrades, and renovations to the Facility took place, and Jacobs gave final performance acceptance in December 2020. *Id.* at 10. Jacobs approved the performance testing that had been done and transmitted a Written Test Report to the City on December 30, 2020. *Id.* at 11. Problems then arose: "On January 18, 2021, Jacobs informed the City of its failure to operate the Facility in compliance with the City's USEPA/NPDES and NMED groundwater protection permits for an undetermined period during 4 months of sampling events." *Id.* In May 2021, the City informed Jacobs that it was missing several reports required under the Agreement and that significant sewer overflows, spills, and discharges were occurring. *Id.* at 12. Jacobs informed the City of additional necessary work on March 8, 2022, and also affirmed that a piece of the system called the "band screens," which were "critical to the proper functioning of the grit system," were working effectively. *Id.* at 12. The grit system, however, "still [was] not functioning properly," and several other problems, including sewer overflows and environmental violations, had occurred. *Id.* at 13.

On December 23, 2024, the City filed suit against the defendants in state court for breach of contract, among other claims. *Id.* at 2. On November 14, 2025, some of the defendants removed this case to federal court. Doc. 1. NMED entered an appearance and answered the complaint shortly thereafter. Docs. 7, 8. The removing defendants moved to stay the federal proceedings and compel arbitration. Doc. 9. By consent of all parties, the Court stayed briefing on that motion because the City represented that it soon would file a motion to remand. Docs. 19, 20. The motion to remand was filed a few days later, Doc. 22, and the defendants filed a joint response, Doc. 24. The City filed a reply after an unopposed extension. Doc. 36. The defendants moved to file a surreply, Doc. 39, to which the City responded in opposition, Doc. 41.

While this process unfolded, in January 2026, NMED filed a motion for judgment on the pleadings. Doc. 34. The City moved to stay briefing on that motion, Doc. 37, which several defendants opposed, Doc. 38. The City replied. Doc. 40.

## ANALYSIS

The motion to remand (Doc. 22) alleges that there is no federal jurisdiction in this case and that remand is appropriate. Doc. 22. The Court therefore begins with this motion because it cannot render judgment on the merits of this case if it lacks jurisdiction. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (finding that it was necessary to address personal jurisdiction before reaching merits of case "[b]ecause a court without jurisdiction over the parties cannot render a valid judgment"). The scope of the briefing on the motion to remand, however, is not clear because the parties dispute whether a surreply should be permitted. *See* Docs. 39, 41. The Court thus looks first to the motion to file a surreply to determine what documents constitute the completed briefing on the motion to remand.

3

**I.       Motion to File Surreply (Doc. 39)**

In its motion to remand, the City argues that NMED is a state agency, and the presence of a state agency inherently destroys diversity jurisdiction. Doc. 22 at 4. It then argues against fraudulent joinder, a matter the other defendants raised in their notice of removal. *Id.* at 5–12; *see also* Doc. 1 at 6. In their response, the defendants argue that NMED's joinder constitutes fraudulent joinder because the City's claim against NMED is unripe, and they attach a declaration that NMED has not sought repayment of the Loan. Doc. 24 at 6–19; Doc. 24-1 at 2–3. The declarant notes that the City and NMED entered into a second loan agreement (the "Second Loan Agreement," with the relevant loan being the "Second Loan") on December 2, 2024, to fund improvements to the Facility, and states that "[c]ommercial activities between the NMED and the City of Gallup relating to these loans are currently dynamic." Doc. 24-1 at 3.

In its reply, the City asserts that its claim against NMED *is* ripe; it attaches an exhibit of selected email correspondence between counsel for NMED and counsel for the City. Doc. 36 at 2; Doc. 36-1. Additionally, the City notes that it "intends to amend and supplement its complaint to seek not only additional declaratory relief but also to assert a claim for breach of contract against NMED" pertaining to NMED's alleged failure to review and approve the plans for corrective work to the Facility under the terms of the Second Loan. Doc. 36 at 2; *see also* Doc. 36-4 (proposed First Amended Complaint).

Defendants argue that because the propriety of removal depends on the complaint at the time of removal, the Court should not consider the information about the Second Loan. Doc. 39 at 2–3. The complaint that was removed—the currently operative complaint—contains no allegations against NMED for breach of contract under the Second Loan Agreement. In the alternative, if the Court does consider the information about the Second Loan, Defendants

request leave to file a limited surreply because the City made new allegations and arguments for the first time in its reply brief. *Id.* at 3.

The City states that it "does not object to submission of the Defendants' proposed surreply, but asks that it similarly be permitted to address new arguments raised in the surreply, either in a brief or in oral argument." Doc. 41 at 2.

As an initial matter, the Court will not consider the proposed amended complaint. The only complaint that has been filed in this case is the initial complaint that was attached to the Notice of Removal. Doc. 1-1. The complaint has not been amended; the City states only that it "intends to amend" its complaint as attached in Doc. 36-4. Doc. 36 at 2. The parties put the cart before the horse by arguing whether the proposed amended complaint would satisfy diversity jurisdiction when no motion to amend has been filed, much less granted. The Court therefore will not consider Doc. 36-4 or any argument about what claims or allegations may appear in a future version of the complaint not currently before the Court.

Separately, however, the Court must determine whether the factual allegations—the emails and affidavit testimony regarding interactions between the City and NMED—should be considered. In this analysis, timing is paramount. The Tenth Circuit dictates that removal is appropriate if the plaintiff could have initiated the action in federal court. *See Hunt v. Lamb*, 427 F.3d 725, 726–27 (10th Cir. 2005); *see also Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015) ("[I]t is clear the relevant time period for determining the existence of complete diversity is the time of the filing of the complaint."). Some courts impose an alternative or additional requirement that diversity be present at the time of removal. *See Pacheco v. Allen*, No. 1:20-cv-00146, 2020 WL 2541960, at *2–4 (D.N.M. May 19, 2020) (discussing and collecting cases); *see also Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488

(10th Cir. 1991) ("[T]he propriety of removal is judged on the complaint as it stands at the time of the removal."). *Pacheco* concluded that diversity must be present *both* at the time of filing the complaint and at the time of removal. 2020 WL 2541960, at *3. The Court finds *Pacheco*'s analysis persuasive, particularly in light of *Siloam Springs* and *Pfeiffer*, and will consider both points in time when ruling on diversity jurisdiction in this case.[2]

The Court will not consider the factual allegations in the City's reply pertaining to ripeness (the email correspondence in Doc. 36-1) because these interactions had not taken place at the time of removal *or* at the time of filing; the earliest email is dated January 8, 2026. Doc. 36-1 at 1; Doc. 1 (notice of removal filed November 14, 2025). The Court therefore will not consider the surreply as it pertains to these allegations.

The Court will consider evidence regarding the existence of the Second Loan Agreement found in the defendants' response (Doc. 24 at 11), Ms. Rhoton's affidavit (Doc. 24-1 at 3 ¶ 13), and the City's reply (Doc. 36 at 2, 7–8). The affidavit establishes that the City and NMED had entered the Second Loan Agreement at the time of filing in state court and at the time of removal. *See* Doc. 24-1 at 3 (Second Loan Agreement established December 2, 2024); Doc. 1 (notice of removal filed November 14, 2025); Doc. 1-1 at 3 (state case filed December 23, 2024). However, the Court will *not* consider the events that transpired after the notice of removal was filed involving the Second Loan Agreement. The emails in Doc. 36-1 post-date the removal of this case and therefore have no bearing on whether removal was proper when it took place.

---

[2] As noted in *Pacheco*, there are exceptions to this rule not applicable here. 2020 WL 2541960, at *3. If, for example, the *plaintiff* takes an action after filing the complaint which causes complete diversity to exist, a defendant may remove the case at that point. *See id.* (citing *DeBry v. Transamerica Corp.*, 601 F.2d 480, 487 (10th Cir. 1979) ("[W]here the plaintiff, by [v]oluntary action, changes the situation, such as by dismissing a non-diverse defendant[,] to bring about a diversity situation, the [removal] statute does apply.")).

Because the surreply addresses the post-removal email exchange, the Court will not consider it. Additionally, the Court will deny the City's request for the opportunity to file its own surreply because the Court will not consider the defendants' surreply. The briefing ends with the City's reply. The motion for surreply (Doc. 39) is DENIED.

## II.    Motion to Remand (Doc. 22)

States and "arms of the state" are not "citizens" of any state for diversity purposes, and their presence in an action destroys diversity jurisdiction. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973); *Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010). NMED was created by statute "in the executive branch" as a "cabinet department." N.M. STAT. ANN. § 9-7A-4. The Court finds, and the parties agree, that NMED's presence in the case normally would destroy diversity jurisdiction. *See* Doc. 1 at 6; Doc. 22 at 4. If this Court lacks jurisdiction, it must remand. As a general matter, when a court considers its jurisdiction on removal, ambiguity should be construed in favor of remand. *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).

The parties disagree, however, about whether NMED has been fraudulently joined. "A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction." *McDaniel v. Loya*, 304 F.R.D. 617, 626 (D.N.M. 2015). "To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Ducher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). The defendant seeking removal bears the burden on this issue. *Id.*

The defendants take the second approach and argue that the City cannot seek a declaratory judgment against NMED in state court because its claim against NMED is not ripe. Doc. 24 at 1. This assertion leads to a preliminary dispute that the Court must resolve: the appropriate standard to employ in determining whether fraudulent joinder has occurred when the allegations are based on ripeness.

### A. Fraudulent Joinder "Impossibility" Standard vs. General Ripeness Standard

This case involves the intersection of two jurisdictional issues: fraudulent joinder and ripeness. On its own, fraudulent joinder involves a strict standard: "A party is fraudulently joined when there is no *possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Goucher College v. Continental Cas. Co.*, 541 F. Supp. 3d 642, 647 (D. Md. 2021) (internal quotation marks omitted). "Even a glimmer of hope will suffice" to keep the defendant in the case; the standard is more favorable to the plaintiff even than Federal Rule of Civil Procedure 12(b)(6). *Id.* at 647–48 (internal quotation marks omitted); *see also Dutcher*, 733 F.3d at 989 (court did not find fraudulent joinder but "that does not mean that the plaintiffs have stated a valid claim against [defendants]"). The Tenth Circuit has articulated a similar standard, albeit with different language: "The case law places a heavy burden on the party asserting fraudulent joinder," requiring the Court to "initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party" before determining "whether that party has any possibility of recovery against the party whose joinder is questioned." *Montano v. Allstate Indemnity*, 211 F.3d 1278 (Table), 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000).

General disputes over ripeness in the absence of fraudulent joinder do not face such a high bar. Rather, ripeness is a doctrine of justiciability in which New Mexico courts consider

"fitness [of] the issues for judicial decision and the hardship to the parties of withholding court consideration." *Am. Fed. of State v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 2016-NMSC-017, ¶¶ 16–19, 373 P.3d 989, 993–94. In cases involving declaratory judgment, the presence of an "actual controversy"—one prerequisite of which is ripeness—is required for the district court to assume jurisdiction over the matter at all. *New Energy Economy, Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 17, 243 P.3d 746, 752, 149 N.M. 42, 48. Jurisdictional disputes, of course, normally do not involve the sort of tilting of the scales that a fraudulent joinder analysis does: while a plaintiff must satisfy justiciability requirements, the Court has a sua sponte obligation to consider jurisdictional issues, and the parties may not waive or consent to jurisdiction on their own. *See Am. Fed. of State*, 2016-NMSC-017, ¶¶ 15–16, 373 P.3d at 993.

A limited body of case law exists at the intersection of these two issues—when fraudulent joinder is claimed based on the lack of ripe claims against a defendant. In *Goucher College*, the district court for the District of Maryland applied the "impossibility" standard, asking whether it was *possible* that the claim was ripe. 541 F. Supp. 3d at 649; *see also id.* at 649 n.4. In *Fayette County Solid Waste Authority v. ERP Environmental Fund, Inc.*, the district court for the Southern District of West Virginia also applied this higher standard, citing *Goucher College*. No. 2:25-cv-00023, 2025 WL 1834181, at *2 (S.D.W.V. July 3, 2025).

One Tenth Circuit case does not articulate its standard clearly, likely because the plaintiff admitted that the claim against the purportedly fraudulently joined defendant was unripe; the Tenth Circuit therefore did not need to apply any particular standard to decide the ripeness issue (or the interrelated fraudulent joinder issue) for itself. *See Brazell v. Waite*, 525 F. App'x 878, 882 (10th Cir. 2013) (plaintiff admitted claim was unripe so court concluded that the unripe claim

never should have been brought "and may be disregarded for diversity purposes" without performing an analysis of whether the claim was unripe under any particular standard).

Another case applies a modified Rule 12(b)(6) standard to determine the ripeness of a claim for fraudulent joinder purposes: *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-cv-00665-RP, 2020 WL 6537230, at *3–5 (W.D. Tex. Nov. 5, 2020) (applying Rule 12(b)(6) standard to determine that a negligence claim was unripe and therefore concluding that the defendant was "improperly joined to defeat diversity jurisdiction"). This decision likely derives from Fifth Circuit guidance, which binds the Western District of Texas. *See Smallwood v. Illinois Cent. Ry. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (in a fraudulent joinder action, directing lower courts to apply a "Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant" or, if the plaintiff states a claim but has misstated or omitted facts pertinent to joinder, to "pierce the pleadings and conduct a summary inquiry"); *Travis v. Irby*, 326 F.3d 644, 648–49 (finding that a Rule 12(b)(6) standard with a scope wide enough to pierce the pleadings properly measures the reasonableness of the possibility of recovery, combining what appeared to be contradictory language in previous case law).

The Fifth Circuit and Tenth Circuit appear to diverge regarding whether a Rule 12(b)(6)-type analysis is appropriate; while the Fifth Circuit endorses this approach in *Smallwood* and *Travis*, the Tenth Circuit explicitly states in *Dutcher* and *Montano* that the standard for fraudulent joinder is more favorable to the plaintiff than the Rule 12(b)(6) standard. *See Montano*, 2000 WL 525592, at *2 ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6) . . . ."); *Dutcher*, 733 F.3d at 989 (although defendants did not prove fraudulent joinder, "that does not mean that the plaintiffs have stated a valid claim" against them). Because

10

of this different standard, the Court does not find case law from within the Fifth Circuit persuasive on this issue; the Fifth Circuit's adoption of a modified Rule 12(b)(6) standard contradicts the (admittedly limited) standards articulated by the Tenth Circuit.

Nor is the Court persuaded to apply a more lenient standard by *Brazell*, an unpublished Tenth Circuit case with a crucial factual difference. In *Brazell*, the Tenth Circuit did not directly consider whether there was any possibility that the relevant claim was ripe. Indeed, it did not need to: the plaintiff had admitted the claim was unripe. The fact that *Brazell* did not take the extra step of applying an impossibility standard to an undisputed issue does not mean that the Tenth Circuit has repudiated the impossibility standard altogether when ripeness is an issue. The Court will not interpret the Tenth Circuit's silence so broadly.

Given the remaining body of case law, the Court believes that the impossibility standard is appropriate for fraudulent joinder claims where the analysis involves ripeness. That is, when a defendant alleges that a defendant has been fraudulently joined because the claim against it is unripe, the Court will consider whether there is any reasonable possibility that the claim could be ripe. If there is, the Court will not find fraudulent joinder, which means that NMED is a proper defendant and the case must be remanded. If there is no reasonable possibility that the claim could be ripe, however, the Court will find that NMED is fraudulently joined as a defendant and diversity jurisdiction exists in federal court.

### B.  Ripeness of Declaratory Judgment Claim

Having determined the correct standard, the Court next considers the ripeness issue itself. The City's sole claim against NMED is for declaratory judgment. Doc. 1-1 at 27–28. The City alleges that because of the other defendants' breaches, the City is unable to satisfy the requirements of the Loan, and the parties are in opposition regarding the state of the Project. *Id.*

11

Because the outcome of this dispute "may have adverse consequences for the City respecting its obligations under the Loan or, on the contrary, may adversely impact NMED's interests in the Loan, the Interim Loan Agreement, and their enforcement," the City seeks declaratory judgment against NMED to involve it in "a single proceeding in which all interested parties are present." *Id.* at 28. The City requests that the Court enter an order "[d]eclaring that the City's repayment and other obligations to NMED are not due and owing to NMED because of Defendants' breaches, actions and inactions." *Id.* at 29.

New Mexico's Declaratory Judgment Act "requires the presence of an actual controversy before a district court can assume jurisdiction in a declaratory judgment action," and one prerequisite of an actual controversy is that "the issue involved must be ripe for judicial determination." *New Energy Economy, Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 17, 149 N.M. 42, 48, 243 P.3d 746, 752. "The ripeness analysis normally involves a finding of fitness for review and a cognizable hardship to the parties of withholding court consideration"—cognizable hardship normally meaning "direct and immediate harm," and fitness considering "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *N.M. Boys & Girls Ranch v. N.M. Bd. of Pharmacy*, 2022-NMCA-047, ¶ 12, 517 P.3d 248, 253.

Here, the Court finds that under the applicable standard, which is highly deferential to the plaintiff, there is a reasonable possibility that the claim could be ripe. As discussed below, NMED's statements raise the reasonable inference that it believes it has the right to collect on the loan to the City at any time and simply has not yet done so for unknown reasons that could change at any moment. Because it is reasonable to believe that NMED's stance is that it presently has the authority to collect and has refrained at its discretion for reasons it has not

articulated, the City finds itself at constant risk of having to repay a loan that it asserts it is unable to pay because of the other defendants' conduct. This posture, under the "impossibility" standard, could support a reasonable conclusion that the City's claim against NMED is ripe.

By way of analogy, the Court considers an insurance case—*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1315 (10th Cir. 2024). In that case, two individuals, Felicia and Shawn Richesin, took their car to a mechanic for repairs, retrieved it afterward, and noticed mechanical issues again while driving. *Id.* at 1311. They pulled onto the side of the highway, and Ms. Richesin got out of the car and was struck by another vehicle, which caused her severe injury. *Id.* The driver of the vehicle that struck Ms. Richesin was underinsured, so she and Mr. Richesin sought compensation from the mechanic and its insurance as well. *Id.* The mechanic had an insurance policy from Travelers Casualty Company of America ("Travelers"), with a per-occurrence limit of $500,000 but a higher "general aggregate" limit of $1,000,000. *Id.* The mechanic stipulated to liability and agreed to allow the state court to hold an evidentiary hearing to award legal damages; meanwhile, before the state court had determined the damages, Travelers filed a complaint in federal court seeking a declaratory judgment that the accident was a single occurrence and the applicable coverage limit was $500,000. *Id.* at 1312.

The Tenth Circuit reasoned that in the underlying state litigation, the Richesins *sought* more than $500,000 from Travelers—even if an award in excess of this limit had not yet been granted (and might never be). *Id.* at 1315. Meanwhile, Travelers maintained that the limit for the accident was $500,000. *Id.* "Thus, there exists a real controversy between the parties," and Travelers' efforts to "conclusively establish its rights and responsibility under the Policy *before* it faced the coercive action the Richesins admit they intend to bring is in the heartland of disputes

13

properly resolved under the Declaratory Judgment Act." *Id.* The Court found the matter ripe for declaratory judgment. *Id.*

Here, the circumstances bear some similarities: the City, like Travelers, is concerned it will need to pay money that NMED, like the Richesins, may seek to collect down the line—or may not, depending on the outcome of certain litigation. Admittedly, the imminence of that collection is less clear here. In *Travelers*, the Richesins stated that if the state court determined damages over $500,000, the Richesins would seek it; the only intervening question was what the state court would do. Here, the complaint alleges that "[a]t no time did NMED certify, acknowledge or otherwise agree that Project work was complete," Doc. 1-1 at 11 ¶ 72, and NMED answered that it was "without specific knowledge or information sufficient to form a belief" on that subject and therefore denied the allegation, Doc. 8 at 17 ¶ 72. Therefore, it is unclear whether NMED believes, or has certified, that the work is complete and the City's loan repayments are due and owing. The record demonstrates that NMED has not yet sought repayment, Doc. 24-1 at 2, but also that upon its information and belief, the project was completed in 2020, *id.*, and that under New Mexico law, repayment "shall begin not later than one year after completion of the eligible project or projects for which the loan was made," *id.*

This set of statements from one of NMED's managers is confusing; looking only at the affidavit, the language leaves open the possibility that NMED itself may be violating New Mexico law by refraining from collecting on the loan within one year of project completion. Certainly, NMED has not given a clear indication of what it intends to do with regard to the repayment of this loan. The best summary of its position appears to come from the affidavit itself: "Commercial activities between the NMED and the City of Gallup relating to these loans are currently dynamic. It would be speculative to attempt to forecast either party's future actions

14

based on uncertain facts regarding the project and loans." *Id.* at 3. A NMED manager's legal conclusion that the matter is speculative, of course, does not determine whether the matter is ripe. Rather, the Court views NMED's assertions as supporting its *right* to collect on the loan at any time, even if it has not taken steps to do so.

Given these facts, the Court finds that, under the deferential standards of fraudulent joinder discussed above, there is a reasonable possibility that the City's declaratory judgment claim against NMED could be ripe. The Court therefore finds that NMED has not been fraudulently joined and will remand the case. It will be for the state court to determine whether the claim against NMED *is* ripe under traditional ripeness standards rather than the deferential fraudulent joinder review the Court has undertaken here; the Court today finds only the reasonable possibility that the claim *could be* ripe. And, if the City does move to amend as it has suggested, the additional facts it pleads may inform the state court's decision.

## III.    Attorney's Fees

Finally, the City requests attorney's fees pursuant to 28 U.S.C. § 1447(c). As the City points out, case law dictates that the Court may award attorney's fees when only "the removing party lacked an objectively reasonable basis for seeking removal." *Porter Trust v. Rural Water, Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010). Here, the Court will not grant attorney's fees for the litigation surrounding the removal. Neither party cited to Tenth Circuit or Supreme Court case law directly on point, and it remains possible that the claim against NMED *is* unripe under the usual standard. Under these circumstances, the defendants had an objectively reasonable basis for seeking removal.

15

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART the motion to remand (Doc. 22).

The Court grants remand but not fees. The Court also DENIES the motion for surreply (Doc.

39). Because the Court grants remand, all other pending motions are DENIED without prejudice

as moot. Docs. 9, 34, 37.

It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

16